Good afternoon, your honors, and may it please the court, Margaret Upshaw for Appellant John Fordley, and I'd like to reserve two minutes for rebuttal. I'll watch the clock. In March 2016, Fordley was physically and sexually assaulted by prison guards working in his unit. Miss Upshaw, could you talk a little more slowly because it's hard for me to hear you? Sure, I'll speak up and talk more slowly. In March 2016, Fordley was physically and sexually assaulted by prison guards working in his unit. He then filed a proper grievance through the prison's administrative grievance process. It's undisputed that the prison never responded to that grievance. Under this court's holding in Andres v. Marshall and the holdings of seven other circuits, that failure to respond rendered remedies unavailable, and Fordley should be permitted to proceed in federal court. Defendant's core contention in this case is that by choosing to file a second grievance about the assaults about a month later, Fordley re-triggered his duty to exhaust administrative remedies. We think that's not correct, and there are a couple of reasons why. First, the failure to respond to Fordley's March grievance should end the inquiry. A prison's failure to adhere to its own deadlines renders the administrative process unavailable, and an inmate has sat aside at the exhaustion requirement. Wasn't Mr. Fordley's second grievance out of time, according to the rules anyway? That's exactly right, Your Honor, and that's another reason that we think that the second grievance cannot serve here to revive the administrative process. Under the rules, it was both untimely and duplicative, and those are both grounds for cancellation under the regulations. We think we're an inmate's only... Wait, wait, wait, wait, excuse me, but that's only true as to the restated March incidents, right? There's two different problems with May. Part of it is the one that Judge Berzon just pointed out, that it would've been untimely, but then there are these other incidents that may or may not have been timely. We don't really know that. That's correct, Your Honor, and here... But to the extent they're new, those aren't exhausted because it only made... Am I right? That's correct, Your Honor, and we're not challenging the district court's disposition of the razor blade claims and with respect to the assault claims. To be clear... I'm sorry. Go ahead, Judge Berzon. When you say you're not challenging it, I thought you were asserting that he could amend his complaint to and conclude them because he's now exhausted. Yes, Your Honor, we think the court could remand with instructions per leave to amend, and in that context, for these new complaint would not be subject to the PLRA in terms of arguing that Forley has already properly exhausted... He's not subject to the PLRA because he's no longer in prison? That's correct, Your Honor. He's no longer incarcerated. If he were in prison, I mean, the case law seems not to admit of this. If he didn't exhaust at the time he originally filed and he were still in prison, could he amend? I agree that the case law hasn't necessarily resolved that question as clearly. There's good reason to think that since he did ultimately complete all levels of the administrative process with regard to those other claims, an amended complaint would then not be subject to an exhaustion defense, but regardless, I think that remanding with leave to amend here, we know under Jackson v. Fong that an amended complaint would not be subject to the PLRA, and that's one way in which the court could dispose of the case. We also think that Forley properly exhausted his administrative remedies with regard to the assault and sexual assault claims that are kind of the core of the case, and we think the court could resolve that question on the merits of the exhaustion issue as well. So, what I was going to ask you, Ms. Cepshaw, is just to be clear on your position. Your position is that we should have a per se rule that if a response is untimely, then administrative remedies are exhausted, correct? As opposed to case by case looking at the circumstances. I think that's the correct rule under the PLRA. We also think that this is an easier case given the circumstances and the fact that the second grievance was procedurally invalid, so the court could rule on that narrower ground. That may be true, but the state didn't take that position. So, in other words, if the state had responded and sort of the gotcha, you know, your second petition is untimely and duplicative and we're denying it, that would seem to come within Ross. You would have protections under Ross if the state had then made the process unavailable to Mr. Forley, but they didn't do that here, and in fact, they processed fully that next grievance. So, I guess I have some trouble with that, but I'm also really struggling with as a practical matter what would happen. So, I want you just to assume for purposes of my question that we find the May grievance wasn't exhausted. And so, we're going to do something with that May grievance, remand it as you asked, dismiss it without prejudice, do something with it. But meanwhile, what's the practical effect of the March grievance if the May grievance isn't exhausted? Your Honor, I think that if I'm understanding the question correctly, the question is whether assuming that the May grievance should factor into the inquiry in some way, whether it could, whether Forley has exhausted with regard to the assault claims. Well, it seems like you were tying the two together. Maybe I misunderstood your briefing. I thought you were suggesting that the March grievance would, I'm not really sure I was understanding this, but that we should find the May grievance exhausted because of the March grievance. I wasn't really clear on what you were arguing. So, Your Honor, I think the question is whether Forley exhausted this claim, and we think that he exhausted it through the March grievance when the prison failed to respond. And then the argument with respect to the May grievance is it wasn't sufficient to kind of re-trigger his duty to exhaust such, we acknowledge that he didn't complete every level of review before filing suit with regard to the May grievance, but we don't think he had to. I know there were some different claims with respect to harassment and some other things that happened after the events in March that were included in the May grievance. But aside from that, the core claim, as you call it, the sexual assault and assault claim that he asserted was in his March grievance. We don't have the March grievance for some reason. And then he re-alleged in his May grievance. Are there differences, substantive differences between those two claims? So, Your Honor, I don't think there are substantive differences between the claims. I think the May grievance was an attempt to re-raise the claims that he raised in the March grievance because he never received a response to the March grievance. I'm confused. I thought there were additional incidents alleged in the May grievance that weren't alleged in March and perhaps hadn't occurred in March. Yes, that's correct. I'm having the same trouble as Judge Beatty. What is your argument about why those were exhausted at the time he filed the lawsuit? Those claims. We are not arguing that he exhausted the non, the claims other than the assault and sexual assault claims before filing the lawsuit. We're not, we're not arguing that. We do, we do have the argument about remand and leave to amend, but, but setting that aside, we're not arguing that those were properly exhausted at that time. So the only, the only issue about the March and May grievances is whether the fact that he also filed the March and May grievance made the March grievance now an exhausted, although it was exhausted when they didn't answer it. That's our view of the case, Your Honor. Yes, the proper March grievance was the vehicle for him to exhaust this claim. The prison never responded. That rendered remedies unavailable and- Wait a minute. With respect to remedies on the sexual assault claim, it was investigated in response to the May grievance. He was interviewed. It was went processed through multiple claims of the appeal process. So I'm not sure how you can say that he had no remedy for that claim, that that claim was not addressed because factually it was addressed. So the reason I think that the May grievance doesn't, doesn't change the analysis is because it was procedurally defective under the regulations and the fact that the prison- But the prison didn't assert that. What difference does it make? They processed it. They interviewed him. They investigated. They processed it through appeals. Just to be clear- They never said we're not going to process this. Under the regulations, the prison could have still canceled it at the third level of review. So when Fordley filed suit, it was pending at the third level of review. And both the regulations and prior cases make clear that the California prison system, in fact, does cancel grievances at the third level of review, even after having accepted them on the merits at the second level of review. So when Fordley filed suit, he didn't know whether it would be a dead end or not. So if that had happened, would he have a claim under Ross? So I think he would, but I don't think that means that he doesn't have one here because I think regardless, where the inmate's only vehicle is an administrative grievance that could be canceled for procedural defects that were themselves caused by the prison's failure to respond in the first instance, that's not an available remedy within the meaning of the PLRA. We think if you look at it kind of from a more fundamental perspective, I think the question of availability really has to be analyzed at the time when an inmate can file a timely grievance. And that's consistent with the courts, the Supreme Court's holding in Woodford, which requires that they may comply with procedural regulations, including deadlines. That means that the analysis really has to focus on that time window. And what we know is that for the file, the proper grievance and never received a response to that grievance. I do see my time's expired, but I'm happy to answer any further. Thank you. Thank you. You may have a minute Deputy Attorney General Kevin Booth for defendants appellees. Your Honor, this court should affirm the judgment for three reasons. First, concerning the assault claims, there's no tribal dispute that Mr. Fordley had available administrative remedies, but he failed to exhaust them before he filed suit. Despite the initial delay in the grievance process. What is your understanding of whether he can now, if we were to reverse with regard to the March grievance and send the case back, could he then amend with regard to the May grievance because he's now exhausted and is no longer in prison? No, your Honor, because I think under this court, with respect to the, if the court were to conclude that the March grievance was exhausted and we're speaking only about the May grievance, the May grievance, I don't think he can amend it. The additional claims in the May grievance. About the additional claims in the May grievance. The additional claims in the May grievance, because when he brought his operative complaint, he was still in prison and he did not exhaust before he filed suit. And so these are not new claims that were presented below. So is your position, counsel, that those were filed prematurely? There isn't, we don't have jurisdiction to go forward. They're unexhausted. Those claims are unexhausted. Yes. Those claims did not become exhausted until he completed the third level of review. And that. Okay. So Judge Birdson was asking a slightly different question. Assuming they're unexhausted. Her question was, they're exhausted now. Can he amend now that he's out of prison? Now that I don't believe so, your Honor, he can refile his claim. Yes. And bring a new suit. But at the time when his operative complaint was filed and he brought these claims, he was in prison. He remained in prison throughout the litigation below. And the fact that he was released from prison, that key fact did not exist at the time when he actually filed his complaint. Okay. So to that extent, you're adopting the same, I'll call it methodology or advocating of the same methodology as opposing counsel, which is that we would look at as of the day complaint was filed, was he clear to file it? That's an opposing counsel. So under that theory, the March grievance, there hadn't been a response and he would be free to file his complaint as to the March grievance. Yes. I don't believe that he can, in this posture of the case, that there would be a way to supplement in this same action. Well, I'm not talking about supplement. I'm talking about the March grievance. In other words, there's opposing counselors arguing that we should take a snapshot in time and look at the snapshot in time when the complaint was filed. Was he free? Had he exhausted on that date? And it seems to me we have to be consistent. Well, on the day he filed, he hadn't exhausted the May grievance, right? That's correct. All right. So if you win on that, it seems to me then you've got a problem as to the March grievance, because on the day he filed, he had exhausted the March grievance. And I just want to give you an opportunity to respond to that. Well, I would disagree that he exhausted the March grievance, Your Honor, because he still had administrative remedies available to him. Well, not on that day. He hadn't refiled and to refile, the second grievance was untimely as to the March incident. That's the conundrum. To address that point, though, Your Honor, the second grievance that he filed, which restated some of those the assault allegations was not canceled. And if he had, if it goes to, I appreciate that. And I think it's a I think it's why the case is as interesting as it is. But we have to have a mechanism. And it seems to me opposing counsel is arguing for taking that snapshot so that we know. So the prisoner knows. I mean, fairness knows on the day he files, is he free to file or not? That seems to me like the appropriate approach. So there's a workable rule that comes out of all this. So why am I what am I missing there? Well, for one thing, if if the if he had a justification for filing that second grievance, because he can demonstrate that he was prevented from doing so by officers, then he can present that to the to the appeals office and they can accept it for review. If it was improperly canceled, if he could demonstrate that and it was nevertheless improperly canceled, he may appeal that cancellation and again present his evidence regarding why he should have been allowed to refile a duplicative or untimely grievance. And if that was still improperly canceled by the prison authorities, then I think he would have a valid justification under Ross Blake. Are you contesting whether there was a failure to respond and there should have been a failure to respond? Are you contesting that the first grievance was improper, was not answered and should have been and had he not filed the second grievance he could have filed based on the first one? Are you contesting that? We're contesting that he couldn't have filed in the first one or that he could have filed in the first one, except he filed the second one. He could have filed, not that he could have filed with the first one, your honor. I mean, he when he did not receive a response, but he was nevertheless in communication with the appeals office who told him, notified him that his grievance had been accepted and he was in constant communication with them. He was being told that he in fact had administrative remedies available. Now before, well wait a minute. So on the first one, before you go on, does that mean your answer to Judge Berzon's question is, is that as to the March grievance, he was supposed to continue to wait and he wasn't free to file his complaint? Yes, your honor. I don't believe that was free to file at that point, given that he was in communication with the appeals office. How long is he supposed to wait? How long is he supposed to wait? He doesn't get an answer. He files a second grievance before the time the first grievance is run. He files it two days before the 30 days runs on his March grievance. But if he had waited and 30, 40, 50, 60 days or something had passed, couldn't he then just appeal? I mean, couldn't he pursue administrative remedies on that grievance? He could, in the same way that, effectively in the way that he did, which was to submit his grievance and complain that he was not able to get a response before. And then the prison authorities... In other words, if they're not, if they, you don't get a timely answer, you can't go to court. You have to file a new grievance about the fact that you didn't get a timely answer. Well, these are the procedures that are available to the prisoners to to avail themselves of those remedies. Now, there may be a circumstance where, yes, they're the prison officials. It's demonstrated by the facts on the ground, which is how Ross v. Blake characterized it, that they're consistently, consistently unwilling to process or provide some administrative relief for the inmates. Counsel, I wonder, forgive me for interrupting, I wonder if the problem is we have a different understanding about when the answer was due to the March grievance. What is your position about when the answer, when the response was due? The response would have been due on May 9th, based on the 30 working days, based on when he submitted it. Why is your position that it was due, that the prison officials had 30 days to respond to this? I think under the regulations that were in effect at that time, the way that the prison officials processed it was not inconsistent with how an emergency grievance, for example, he concedes that, Mr. Forley concedes that he presented no evidence that he actually requested emergency processing on his appeal that he submitted. Is it the state's position he has to request emergency processing? Isn't it the nature of the of the allegation that triggers the different duty to respond? I mean, the different deadline? It is, and those circumstances have to be clearly described in the grievance, and that was the regulations at that time. And the way that it was processed. Do you know what happened to that grievance? Why do we not have a copy of the March grievance? Does anybody know? That is not reflected in the record, Your Honor. There was no copy of that grievance, and it's not clear why it did not have a separate log number. But what is clear from the record is that eventually the allegations that he raised in the March grievance were considered by the prison officials. An investigation was conducted. He had some avenue to relief that was capable of use. That is the Supreme Court's definition of availability is he had a procedure that was capable of use to obtain some relief. I understand what you're saying, but I still have some confusion about what that relief would be. So we know he filed another grievance in May, and that was processed. But setting that aside, if he hadn't chose to go that route, did he still have any process available? In other words, could he have moved to the next level because he hadn't received a response? Could he have moved to the next level, complaining that his first grievance wasn't treated as an emergency? I mean, were there other remedies under the regs and in the process, other than filing another grievance? Under the regulations at the time, there was no specific procedure for addressing that specific circumstance, aside from what Mr. Fortley actually did, which was to use a form 22 to follow up with the appeals office, which he did and would receive responses to, and then to submit a new grievance explaining the circumstances regarding his initial allegations. And when he did that, those allegations were considered on the merits. An investigation was conducted. He had an available administrative remedy and was using it through the third level, but he filed his suit before he completed the process. And for that reason, he failed to exhaust and the court should affirm the judgment. Thank you. Okay, your time is up. Thank you very much. Ms. Upshaw, we'll give you one minute. Thank you, your honor. Just briefly. Last question. Does it matter that he, did he in fact file the second grievance before the first time in the first one? And does that matter? Your honor, I don't think it matters. There may be a discrepancy of a day. I don't think it matters. We know that the prison never responded to the merge grievance. Well, wait a minute. It matters. On my scorecard, it matters. And my understanding is it was an emergency grievance and the state's position that they had 30 days to respond is dependent upon their, I guess, assumption that the grievance wouldn't have sufficiently spelled out facts to indicate that it was needed to be processed on an emergency matter. So this is important to me. Oh, yes. Can you please slow down? Absolutely. So your honor, I think it should have been processed as emergency grievance. We think the nature of the grievance, the sexual assault complaint against- So that would be five days? And that would be five days. Under that, it was clearly, clearly, their response was clearly untimely. I just want to be clear that even if you look at the normal regulatory deadlines, the prison never responded to the merge grievance, and their May response was still far beyond the deadlines for the merge grievance. Well, this is also representing that there was some dialogue going on, maybe outside the formal grievance procedure at that point. Your honor, defendants are referring to four of these requests for information where he repeatedly asked what was going on with his grievance and the prison said that it was in process. But we know from the record that they never actually responded. So that was in some way inaccurate. It wasn't in process. To answer another question that was raised, four, they could not proceed with the merge grievance without a response. The regulations specifically provide that you need a response at each level of review in order to appeal to the next level of review. That's how the grievance process is structured. Ultimately, our submission is that the prison has to abide by its regulations. Defendant submission is that they don't. But without the prison's own regulations, there's really no workable standards for exhaustion. And this court has itself said that the prison's own regulations define the contours of the exhaustion requirement. We think that rule governs here. The prison failed to abide by its regulations, and this court should therefore reverse. If the court has any questions. Okay, thank you very much. Thank you both for your arguments in Fordley v. Lizarraga. Case is submitted, and we'll go on to Kali v. Saul.
judges: Berzon, Christen, Bade